IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ALEX KHAC LE,
       Petitioner,

vs.                                  Case No.:  5:12cv377/SPM/EMT

PAIGE AUGUSTINE, WARDEN,
       Respondent.
_____/

**REPORT AND RECOMMENDATION**

       This matter is before the court upon a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (doc. 1).  Respondent filed a response (doc. 9), and Petitioner filed a reply (doc. 11).

       This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration of the issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND

       Petitioner is a prisoner of the Federal Bureau of Prisons ("BOP"), who was housed at a federal correctional facility in this District when he filed this habeas action (*see* doc. 1 at 1).[1]  He challenges prison disciplinary action taken against him pursuant to a disciplinary decision issued November 2, 2011 (doc. 1, Ex. 2).

       The following facts are undisputed by the parties.  On September 15, 2011, Incident Report No. 2210842 was filed charging Petitioner with assaulting another person, Inmate Danny Reyes, a violation of Bureau Code 224 (doc. 1 at 6, Exs. 1, 2).  The incident report, written by D. Deremer, an "SIS Technician," alleged the following:

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

On Thursday, September 15, 2011, I completed a review of interviews and injury assessments and a drop note regarding an incident which occurred on Wednesday night, September 7, 2011 in cube PO2-302 (FPC). Specifically, a drop note was received by R & D staff stating, "Inmate Lee and Inmate Reyes was [sic] fighting on wing 4 of P unit Wednesday night. Lee hurt his foot and Reyes' arms are messed up also."

I interviewed inmate LEE (Reg. No. 67486-061) of P unit on Friday, September 9, 2011 at 10:50 a.m., in the Message Center. Inmate [Lee] was questioned about the incident and stated he broke up an argument between Inmate LE, Alex (Reg. No. 38910-037 and inmate REYES, Danny (Reg. No. 20580-047) just before 10:00 p.m. Count. LEE claimed they were in a heated argument over the center locker in the cube and heard that they "got into it" again after count, inferring an assault or fight had occurred.

Following that interview I interviewed inmate LE, Alex (Reg. No. 38910-037). LE stated, "Me and Reyes talked and came to an understanding about the trash can. We both said fine, it'll go on the left side. That was this altercation. We got loud and that was it." Inmate LE was only found to have one visible injury, bruising to the top of his right foot and as he walked across the FPC compound he displayed an apparent limp. LE claimed his foot injury was from stepping wrong on a rock and "rolling it over."

Inmate REYES, Danny (Reg. No. 20580-047) was also interviewed Friday, September 9, 2011, at approximately 2:40 p.m. Inmate REYES had an obvious scratch to the center of his forehead and an abrasion to the inside of his left wrist. Inmate REYES stated, "Me and Le had an argument over where the locker was supposed to be. That was at like 9:45 p.m. on Wednesday night. Then after count I pushed the locker back and he got mad and poked me in the forehead with his fingernail. He used his pinky nail that was real long. Then I told him I wasn't moving the locker back he [sic] kicked me with his right foot. I put my left arm up because I kind of blocked it. His foot hit the locker. Then I went to the bathroom to clean up and he came in and apologized. He asked me to cover up that he injured me by saying I got hurt while working landscaping and he said he was going to say he got hurt while playing soccer."

On September 14, 2011, inmates REYES and LE were re-interviewed in the Special Housing Unit. Neither inmate had a new/different statement with the exception of REYES informing that he received a note (kite) from LE while in SHU. This note allegedly stated I was to hold tight, and that he'll hold out til the end. On September 15, 2011, when I was escorting inmate REYES from SHU to R & D he supplied me with a small piece of paper that he claims was given by LE. It read, "Hold tight. Don't matter [sic] what they say. We clean [sic]. Write back. I will hold till end."

Medical assessments were conducted on both inmates. LE wasn't medically accessed [sic] until Wednesday, September 14, 2011. He was found to have no signs of acute trauma. Inmate REYES was reported to have a cut and scabbed area to the center of his forehead and a minor skin abrasion to the outside of his left wrist.

> Based on this information it is my conclusion that inmate LE assaulted inmate REYES by poking him in the forehead and then kicking him with his right foot, striking his left arm on Wednesday, September 7, 2011, at approximately 10:15 p.m. on Wing 4 of P Unit.

(doc. 1, Ex. 1). Petitioner received a copy of the incident report on September 15, 2011, at 6:50 p.m. (*id.*). Upon initial investigation and review by the Unit Disciplinary Committee on September 20, 2011, the charge was referred to the Discipline Hearing Officer (DHO) (doc. 9, Ex. 3). On September 20, 2011, Petitioner received a Notice of Discipline Hearing Before the DHO and a statement of his rights at the hearing (doc. 9, Exs. 4, 5). Petitioner indicated on the Notice that he wished to have Ms. Hart as a staff representative at the hearing, and he wished to call Inmate Lee and Inmate Manning to testify that an assault did not occur (*id.*). Also on September 20, Petitioner received a notice of his rights, notifying him that he had the right to prior notice of the charge, the right to staff representation at the hearing, the right to call witnesses and present documentary evidence, the right to present a statement in his defense or remain silent, the right to be present at the hearing, the right to be advised of the hearing officer's written decision, and the right to appeal the decision (doc. 9, Ex. 4).

The disciplinary hearing was conducted by J. Howard Losiewicz on October 3, 2011 (doc. 1, Ex. 2). Ms. Hart was unavailable for the hearing, and Petitioner was advised of the option to postpone the hearing, but Petitioner chose Case Manager Mr. Easton as his staff representative, and Easton appeared at the hearing with Petitioner (*id.*). Petitioner testified on his own behalf (*id.*). He denied having injured his foot (*id.*). He testified that on September 7, he and Inmate Reyes had an argument about the location of the trash can in the "cube," specifically, on which side of the locker the trash can should be (*id.*). Petitioner testified he and Reyes were pushing the locker to "equalize the locations" (*id.*). He testified they stopped arguing for count and then resumed after staff left (*id.*). Petitioner testified he eventually capitulated and allowed the trash can to take up room on his side of the cell (*id.*). He stated he and Inmate Reyes shook hands in the restroom and apologized to one another (*id.*). Petitioner denied knowing how Reyes was scratched (*id.*). He stated they were on the compound together and did not have any problems after they reached the compromise (*id.*). He denied there was any kicking or scratching between him and Reyes (*id.*). He also denied that he justified his own injury. He claimed there were no "bad intentions" between him and Reyes (*id.*).

Two inmate witnesses testified, Inmate Dae Won Lee and Inmate John Manning (doc. 1, Ex. 2). Inmate Lee testified Petitioner and Inmate Reyes had a disagreement prior to count regarding the locker and the trash can (*id.*). Inmate Lee testified the argument stopped for count, and he thought it was over (*id.*). Inmate Lee stated he left the cube after count and went to the television

room (*id.*).  He stated the next day, he saw Petitioner and Inmate Reyes talking and drinking coffee together (*id.*).  He stated he did not notice any scratches on Reyes before or after the count (*id.*).

Inmate Manning testified he was lying on his bed reading a book before count (doc. 1, Ex. 2).  He stated he heard a discussion going on, but he did not bother to look up from his book (*id.*).  He testified he did not hear yelling (*id.*).  Inmate Manning testified he stood for the count and left the cube to go to the bathroom as soon as count cleared (*id.*).  He stated he did not witness anything (*id.*).  He stated he had only been assigned to that cube for a couple of months (*id.*).  After Inmates Lee and Manning testified, Hearing Officer Losiewicz asked Petitioner if there were any other facts that should be elicited from either witness, and Petitioner stated he did not have any other questions for the witnesses (*id.*).  Petitioner did not request any other witnesses (*id.*).

Hearing Officer Losiewicz additionally considered the following documentary evidence: (1) Petitioner's written statement complaining about the reporting officer's handling of the investigation, including actions the investigator should have taken had there been any evidence of an assault; (2) Inmate Reyes's medical assessment, which documented a small, scabbed area in the center of his forehead and a minor abrasion to his left wrist; (3) notes between Petitioner and Reyes while in the Special Housing Unit; and (4) the note informing staff of the incident in the housing unit (doc. 1, Ex. 2).

Hearing Officer Losiewicz's written report/decision, issued November 2, 2011, states that the greater weight of the evidence showed that Petitioner committed the infraction (doc. 1, Ex. 2).  His report states he relied upon the reporting officer's statement in the incident report, including Reyes's description of the incident (*id.*).  The report further states:

> The DHO also relies upon the medical assessment dated September 9, 2011, documenting REYES' injuries, i.e., a small, scabbed area to the center of the forehead and a minor abrasion to his left wrist, to make this finding.  The DHO considered LE's denial of having caused REYES' injuries, in both his verbal statement at the hearing and the presented written statement.  The DHO also considered the fact LE has a motive for denying the charge as an attempt to evade responsibility for this act.  Conversely, the DHO can find no such motive or reason for the reporting officer lodging false or exaggerated charges against LE.  Therefore, the DHO is inclined to give greater weight to the reporting officer's description of the incident.
>
> The DHO considered LE's statements about his foot and the reporting officer's observation there was some bruising on the top of LE's right foot.  Unfortunately, the reporting officer did not have this injury assessed by medical staff so there is not much weight the DHO can assigned [sic] to this injury as being indicative of LE's assault on REYES.  Likewise, the anonymous "drop note" and the notes allegedly sent between REYES and LE are not sufficiently vetted to hold much reliability.  The DHO does not rely on these notes for this finding.

The DHO considered the witnesses [sic] testimony about the incident or lack thereof. Each of these witnesses presented themselves as not wishing to be involved in this matter. The DHO suspected each of them possessed more information about the incident than he was able to get them to share at the hearing. Furthermore, the extent of [Reyes's] injury suggests this was not a "knock down, drawn [sic] out" affair and could have been missed by a less than diligent observer. Therefore, the DHO gives little weight to the witness testimony.

The DHO considered LE's denial of having poked REYES in the forehead. The physical evidence, i.e., the medical assessment, supports REYES' statement to the reporting officer was that [sic] LE poked in the forehead by LE's fingernail. Again, the DHO must weigh the motive of the person making the statement. LE has plenty of reasons for denying having committed this act. No reason has been presented or suggested why REYES would provide false statements about how he obtained his injury. Therefore, REYES' statement, supported by the medical assessment, and the lack of any challenge to REYES' credibility, convinces the DHO to assign greater weight to REYES' statement over LE's denial. Accordingly, giving greater weight to REYES' injury and his description of the incident, the DHO finds LE committed the prohibited act of assaulting another person.

(doc. 1, Ex. 2). The hearing officer imposed the following sanctions: disallowance of 27 days of good conduct time, placement in disciplinary segregation for 15 days, placement in disciplinary segregation for another 15 days unless Petitioner had 180 days of "clear conduct," and 60 days of commissary restriction (doc. 1, Ex. 2). Additionally, Petitioner's custody classification was increased to medium security level, and he was removed from the Residential Drug Abuse Program ("RDAP"), which resulted in the loss of his eligibility for early release (*see* doc. 1 at 5–6; doc. 9 at 6–7, Exs. 6, 7).

II.     ANALYSIS

Petitioner raises three challenges to the disciplinary decision. First, he claims BOP officials violated BOP Program Statements and federal regulations during the investigation of the charge, disciplinary proceedings, and administrative appeal proceedings, which resulted in a wrongful determination of guilt (doc. 1 at 5, 6–18). Second, he claims BOP officials violated his Fifth Amendment due process rights during the disciplinary proceedings and administrative appeals process (*id.* at 5, 19–26). Third, Petitioner claims that the disciplinary decision subjected him to cruel and unusual punishment, in violation of the Eighth Amendment, because it extended his incarceration by one year and twenty-seven (27) days (*id.* at 5, 26–27).

Respondent contends Petitioner was not denied due process under either BOP policy or common law (doc. 9 at 8). Further, even if BOP staff departed from the procedures outlined in the BOP's policy statements and federal regulations, the mere violation of regulations does not give rise to a due process violation (*id.*). Respondent argues that the record establishes Petitioner received

the procedural due process protections to which he was constitutionally entitled under <u>Wolff v. McDonnell</u>, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) (*id.* at 8–10).  Furthermore, there was sufficient evidence to show that Petitioner committed the disciplinary infraction; therefore, substantive due process was satisfied under <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985) (*id.*).

> A.  Ground One:  "Violations of Bureau of Prisons Policy Statement 5270.09 and 28 C.F.R. 541 resulting in wrongful determination of guilt in a disciplinary hearing . . . ."
>
> Ground Two: "Violation of Petitioner's Fifth Amendment Right against deprivation of liberty without due process of law." [2]

Petitioner contends the investigating officer, hearing officer, and officials reviewing his administrative appeals failed to follow the protocol set forth in BOP Program Statements 5270.09 and 1330.17 and 28 C.F.R. §§ 541, 542 (doc. 1 at 6–19).  He contends the failure to follow the Program Statements and federal regulations violated his Fifth Amendment due process rights (*id.* at 19–26).

Petitioner contends the investigating officer violated Program Statement 5270.09 by failing to deliver the incident report to him within 24 hours of staff becoming aware of the incident and instead waiting 6 days, failing to provide him a copy of the incident report at the beginning of the investigation, and failing to document the reason for the delay (doc. 1 at 9–11).  Petitioner alleges the investigating officer attempted to cover-up the violations of Program Statement 5270.09 by falsifying the date staff became aware of the incident as September 15, instead of September 9 (*id.*). Petitioner additionally contends the investigation was inadequate, because the investigating officer delayed until September 14, 2011, to obtain a medical assessment of Petitioner, and he failed to take photographs of Petitioner's allegedly bruised foot, which would have proved he was not involved in an assault (*id.* at 21).  He also contends the investigating officer made an improper inference in the incident report by inferring that an assault occurred from Inmate Lee's statement that he heard Petitioner and Reyes "got into it," but Lee's statement provided no basis for this inference (*id.* at 20).

Additionally, Petitioner contends the hearing officer violated 28 C.F.R. 541.8(f)(6) by relying on a confidential informant without establishing the reliability of the informant (doc. 1 at 13–14, 21; doc. 11 at 5).  He also contends the hearing officer's decision was not supported by the greater weight of the evidence, as required by Program Statement 5270.09, or sufficient evidence under the standard set forth in <u>Hill</u>, 472 U.S. 445 (1985) (doc. 1 at 14–18, 21; doc. 11 at 6–7).

---

[2] The court consolidated Grounds One and Two for organizational purposes.

Petitioner additionally contends BOP officials delayed the administrative appeals process by failing to provide him with the hearing officer's report within the 15-day time frame set forth in Program Statement 5270.09, ignoring critical new information provided in Petitioner's appeal at the Regional level, and failing to provide a decision from the Central Office within the 40-day time frame set forth in Program Statement 1330.1 (doc. 1 at 16–18, 22, 24).

Prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full panoply of due process rights to which a defendant in a criminal proceeding is entitled does not apply. Wolff, 418 U.S. at 563–67. Once prison disciplinary charges are filed, the Supreme Court has outlined that due process requires: (1) written notice of the charges be given to the inmate at least twenty-four hours before his appearance before the hearing committee, (2) a written statement by the hearing committee citing the evidence relied on and the reasons for the disciplinary action be given to the inmate, and (3) the opportunity for the inmate to call witnesses and present documentary evidence in his defense, so long as institutional safety and correctional goals are not jeopardized. *Id.* There is no constitutional right to confront and cross-examine witnesses. *Id.* at 567–69.

Additionally, in order to satisfy due process, a decision of a prison disciplinary team must be supported by "some evidence" in the record. Hill, 472 U.S. at 455; Young v. Jones, 37 F.3d 1457 (11th Cir. 1994); Inglese v. Warden, U.S. Penitentiary, 687 F.2d 362, 363 (11th Cir. 1982). Furthermore, "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455 (emphasis added).

Petitioner failed to show he was denied the enumerated procedural protections required by Wolff. He received notice of the charge and notice of the hearing at least 24 hours prior to the hearing (doc. 9, Exs. 4, 5). At the hearing, Petitioner was afforded the opportunity to call witnesses and present documentary evidence in his defense (*see* doc. 1, Ex. 2). After the hearing, he received a written statement by the hearing officer citing the evidence relied on and the reasons for the disciplinary action (*id.*). Therefore, Petitioner failed to show a violation of his procedural due process rights.

Additionally, the evidence was sufficient to support the hearing officer's decision. As previously discussed, the hearing officer based his decision on Inmate Reyes's description of the incident to the investigating officer, Reyes's medical assessment showing a cut and scabbed area on his forehead and a skin abrasion on his wrist, and the weighing of Petitioner's and Reyes's

credibility, including possible motives for making the statements they made. This constituted sufficient evidence under Hill to support the disciplinary decision. *See* Hill, 472 U.S. at 456 (prison guard's testimony and copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause); *see also* Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008) ("[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation . . . "); Hrbek v. Nix, 12 F.3d 777, 781 (8th Cir. 1993) (same). Given the fact that there was "some evidence" upon which the hearing officer could rely, as well as the disciplinary (as distinguished from criminal) nature of the proceedings and sanctions, this court finds there was sufficient evidence upon which to base a finding of Petitioner's guilt of the charge to satisfy due process.

Finally, to the extent Petitioner argues that the alleged violations of BOP Program Statements and federal regulations by the investigating officer, hearing officer, and officials reviewing his administrative appeals provide a basis for habeas relief independent of his due process claims, his claim is without merit. A claim that the BOP violated its own Program Statements, when the Program Statements were not mandated by statute or the constitution, does not constitute a violation of federal law; therefore, it cannot be sustained in a habeas petition. *See* Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011). Program Statements are BOP policies, guidelines or interpretative rules, not substantive law. *Id.* (citing Jacks v. Crabtree, 114 F.3d 983, 985 n.1 (9th Cir. 1997); Reno v. Koray, 515 U.S. 50, 61 (1995) (characterizing BOP program statements as simply interpretive rules)); BOP Program Statement 1221.66, Chps. 1.2, 2.1 (referring to BOP program statements as "policies and procedures," not rules); Miller v. Henman, 804 F.2d 421, 426 (7th Cir. 1986); *see also* United States v. Wilson, 413 F.3d 382, 389 (3d Cir. 2005) (Department of Justice guidelines and policies do not create enforceable rights for criminal defendants); United States v. Craveiro, 907 F.2d 260, 264 (1st Cir. 1990) ("[T]he internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party."). Further, although an agency's failure to follow its own policies or non-statutory regulations may constitute a deprivation of liberty without due process, an agency's failure to comply in every respect does not in every case require the grant of relief; instead, courts examine the specific facts to determine if the petitioner suffered substantial prejudice, that is, prejudice in the constitutional sense. *See* Mullen-Cofee v. I.N.S., 976 F.2d 1375, 1380 (11th Cir. 1992) (alien's challenge to deportation decision, on ground that immigration judge failed to comply with applicable regulations, did not entitle him to relief where alien failed to demonstrate that alleged misconduct resulted in the "substantial prejudice"

necessary to prevail in due process challenge to deportation proceeding); <u>Gov't of the Canal Zone v. Brooks</u>, 427 F.2d 346, 347–48 (5th Cir. 1970)[3]; <u>Turner v. Henman</u>, 829 F.2d 612, 614 (7th Cir. 1987) (habeas petitioner's challenge to United States Parole Commission's determination of petitioner's parole date, based solely on Commission's alleged failure to follow its regulations, did not entitle him to habeas relief where petitioner failed to show that the procedures used by the Commission were unconstitutional); <u>Derrickson v. St. Louis Bd. of Educ.</u>, 703 F.2d 309, 315 (8th Cir. 1983) (finding that, as a matter of law, the defendants' alleged deviations from the regulations did not amount to a constitutional deprivation); *see also, e.g.*, <u>Sharma v. Drug Enforcement Agency</u>, No. 11-10963, 2013 WL 791396, at *4 (11th Cir. Mar. 4, 2013) (unpublished) (even where a governmental entity fails to follows its own regulations providing for procedural safeguards, it is not a denial of due process if the individual was provided with adequate notice such that his rights were not prejudiced); <u>Mackey v. Fed. Bureau of Prisons</u>, 440 F. App'x 373 (5th Cir. 2011) (denying habeas relief where petitioner challenged disciplinary decision of BOP but failed to establish that any of the alleged violations of federal regulations and/or BOP policy statements resulted in the required prejudice); <u>Terry v. Fondren</u>, No. 08-1059 (PJS/SRN), 2008 WL 5071077, at *5–6 (D. Minn. Nov. 24, 2008) (BOP's failure to comply with regulations regarding provision of incident report to inmate within 24 hours did not warrant habeas relief where inmate received adequate notice of charges against him and other due process requirements set forth in <u>Wolff</u>).

Here, the record refutes Petitioner's contention that the hearing officer relied upon confidential information without determining its reliability, in violation of 28 C.F.R. 541.8(f)(6). The hearing officer's written report states "N/A" in the section of the report designated for use when confidential information was used to support the hearing officer's findings (doc. 1, Ex. 2 at 3). Further, in the written report, the hearing officer stated he relied upon Inmate Reyes's medical assessment and Reyes's statement to the investigating officer to support his decision; and he expressly stated he did not rely on the anonymous "drop note" or the notes allegedly sent between Petitioner and Inmate Reyes, because they were not reliable (*id.* at 4). Therefore, Petitioner failed to show that the hearing officer violated federal regulations.

Additionally, Petitioner failed to show that BOP officials' failure to comply with time deadlines set forth in the federal regulations and BOP Program Statements entitle him to relief. With regard to Petitioner's allegedly untimely receipt of the incident report, the federal regulations and

---

[3] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981.

Program Statements provide that an inmate "will ordinarily" receive the incident report within 24 hours of staff becoming aware of his involvement in the incident. 28 C.F.R. § 541.5; Program Statement 5270.09. Here, even though Petitioner may have received the incident report 6 days after staff became aware of his involvement in the assault, and the reason for the delay was not documented in the discipline record, Petitioner received adequate notice of the charge and hearing to satisfy due process concerns, as discussed *supra*. Therefore, he failed to demonstrate he is entitled to habeas relief on this claim.

Further, Petitioner failed to show a violation of Program Statement 5270.09 with regard to the timing of his receipt of the hearing officer's report. Contrary to Petitioner's assertion, the Program Statement does not require that he be given a copy of the report within 15 days of the <u>hearing</u>; instead it requires that he be provided a copy within 15 working days of the <u>decision</u>. Here, the hearing officer's decision is dated November 2, 2011, and it was delivered to Petitioner on November 10, 2011 (*see* doc. 1, Ex. 2). Moreover, Petitioner failed to show his appellate rights were prejudiced as a result of any alleged delay. Therefore, Petitioner is not entitled to relief on this claim.

Likewise, Petitioner is not entitled to relief on his allegations that the Regional Director and General Counsel failed to comply with 28 C.F.R. § 542.18 and Program Statement 1330.17, which set forth the time lines for responding to his administrative appeals. The regulation provides that once the appeal is logged into the Administrative Remedy Index as received, the Regional Director shall respond within 30 calender days. 28 C.F.R. § 542.18. When an appeal of the Regional Director's denial is received by the General Counsel, the General Counsel shall respond within 40 calendar days. *Id.* The time for response may be extended once by 30 days at the regional level and 20 days at the Central Office level. *Id.* Here, Petitioner's appeal to the Regional Director was received January 3, 2012, and the response was issued 57 days later, on February 29, 2012 (doc. 1, Ex. 4). This response was within the 30-day plus 30-day-extension time frame set forth in the regulation. Additionally, even though the Central Office's response was well beyond the deadline (*see* doc. 9, Ex. 6, Attach. 3), Petitioner failed to show he suffered substantial prejudice as a result of the delay. On September 5, 2012, Petitioner was advised by the Central Office that he could consider the absence of a response to be a denial at the Central Office level (*see* doc. 1, Ex. 5). Petitioner filed the instant habeas action prior to receiving a response from the Central Office, and Respondent did not assert an exhaustion defense. Therefore, Petitioner failed to demonstrate he was prejudiced as a result of the BOP's failure to comply with the deadlines set forth in the federal regulations and Program Statements.

As discussed *supra*, Petitioner was afforded the procedural and substantive due process protections guaranteed by the Fifth Amendment. Furthermore, he failed to show he is entitled to relief on his claims regarding BOP officials' alleged failure to comply with federal regulations and Program Statements. Therefore, Grounds One and Two should be denied.

B. <u>Ground Three: "Violation of Petitioner's Eighth Amendment right against cruel and unusual punishment."</u>

Petitioner contends the Regional Director and General Counsel violated his Eighth Amendment rights by upholding the disciplinary decision, thereby subjecting him to detention beyond the termination of his sentence, even though he presented new evidence that impacted the reliability of Inmate Reyes's statement to the investigating officer (doc. 1 at 26–28). Petitioner states he informed the Regional Director in his appeal that correctional officers advised him that Inmate Reyes falsely accused another inmate (Inmate Arturo Morfin) of assaulting him in another incident (doc. 1, Ex. 4).

Respondent contends that because the hearing officer's finding of guilt was supported by "some evidence," as required by <u>Hill</u>, Petitioner failed to show an Eighth Amendment violation (doc. 9 at 10).

The Regional Director and General Counsel's upholding the disciplinary decision did not unconstitutionally extend Petitioner's incarceration. Petitioner's full term release date is July 27, 2014, with a projected good conduct time release date of July 4, 2013 (doc. 9, Ex. 1, Declaration of Mark Wilfing ¶ 4). His loss of 27 days of good conduct time did not unconstitutionally extend his sentence, because he was afforded procedural and substantive due process during the disciplinary proceedings, as discussed *supra*. Furthermore, his termination from the RDAP as a result of the disciplinary decision, which rendered him ineligible for early release, did not unconstitutionally extend his sentence, because inmates have no constitutional right to early release prior to completion of a valid sentence. *See* <u>Greenholtz v. Inmates of Neb. Penal & Corr. Complex</u>, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). Therefore, Petitioner failed to establish he is entitled to habeas relief on Ground Three.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

At Pensacola, Florida, this <u>15</u>[th] day of April 2013.

*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).